UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ALOPEXX, INC., | ) | Civil Action No. |
|  | ) | 22-11081-FDS |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| XENOTHERA, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

**MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS ON
*FORUM NON CONVENIENS* GROUNDS, OR TO STAY CASE PENDING
RESOLUTION OF FIRST-FILED LITIGATION IN FRANCE**

**SAYLOR, C.J.**

This is an intellectual-property dispute stemming from the development of vaccine and antibody treatments used to treat infections. According to the complaint, in 2018, plaintiff Alopexx, Inc. provided defendant Xenothera with a small amount of its proprietary vaccine to conduct a single experiment. Xenothera allegedly used the results of the experiment to develop a competing product candidate, in violation of the parties' Material Transfer Agreement ("MTA").

After Alopexx declined to provide Xenothera with a license to the vaccine—which Xenothera requires to produce its product—Xenothera filed suit in French commercial court seeking a declaration of licensing rights. Alopexx then filed suit in this court one month later, seeking a declaratory judgment of ownership rights in the vaccine, and alleging breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. Xenothera has moved to dismiss on the basis of *forum non conveniens*. In the alternative, it seeks a six-month stay of this case to allow the French court to resolve any potential motions by

Alopexx in that action.

For the reasons set forth below, the motion to dismiss on the basis of *forum non conveniens* will be denied, and the request for a stay will be granted, pending further order of the Court.

I.     **Background**

The following facts are set forth as alleged in the complaint and attached exhibits.

A.     **Factual Background**

Alopexx, Inc. is a biotechnology company incorporated in Delaware with a principal place of business in Cambridge, Massachusetts. (Compl. ¶ 13). Defendant Xenothera is a French biotechnology company with a principal place of business in Nantes, France. (*Id.* ¶ 14).

Alopexx develops novel immune therapies with the goal of reducing reliance on antibiotic drugs. (Compl. ¶ 5). Alopexx has two proprietary, clinical therapeutic candidates: a chemically synthesized vaccine called AV0328, and a human monoclonal antibody called F598. (*Id.*). F598 targets Poly-N-acetyl glucosamine ("PNAG"), a surface component of microbes that cause serious infections. (*Id.* ¶¶ 7, 17, 20). Alopexx plans to seek regulatory approval for F598 to be used to prevent hospital-acquired infections in intensive-care unit patients. (*Id.* ¶ 20). In 2022, it announced plans to hold an initial public offering to raise funds (at least in part) for Phase II clinical trials for both F598 and AV0328. (*Id.* ¶ 5).

On May 30, 2018, Alopexx entered into a Material Transfer Agreement ("MTA") with Xenothera under which Alopexx agreed to provide Xenothera with a small amount of the AV0328 vaccine "free of charge." (Compl. ¶¶ 30-31; Ex. 1 ("MTA") ¶¶ 1.1, 2). According to the terms of the agreement, Xenothera would use the vaccine to conduct a single experiment "in order to obtain antibodies from animals that will be hyper-immunized against [it]." (*Id.* ¶ 28; MTA ¶ 1.3). Xenothera was not authorized "to use the [vaccine] after the expiry date of [the]

2

Agreement" or for any other purpose without the consent of Alopexx. (Compl. ¶ 33; MTA ¶ 1.2). The MTA further provided that "[t]he Parties [] expressly agree that the right to use the [AV0328 vaccine], as granted under this Agreement, may not, under any circumstances, be construed as expressly or implicitly providing XENOTHERA with any ownership right or title, or option or license, whatsoever over the [AV0328 vaccine]." (Compl. ¶ 36; MTA ¶ 4.2). The MTA therefore "conveyed only a limited, temporary, and nonexclusive right to use AV0328." (Compl. ¶ 36).

> The MTA also contained the following choice-of-law and forum-selection clause:
>
> This Agreement shall be construed and governed by the laws of the Commonwealth of Massachusetts without regard to Massachusetts' conflicts of law principles or of France. The Parties agree that any action arising out of or related to this Agreement may be brought in the Massachusetts state courts or the US federal courts sitting in Boston, Massachusetts or in Nantes, France, and the parties each hereby submit to the in personum [sic] jurisdictions of each such courts for such purposes. The Parties hereby consent to service of process in any such action by internationally recognized courier or by registered mail at their respective addresses set forth on the first page hereof.

(MTA ¶ 13).

In the spring of 2019, Xenothera allegedly communicated the result of the experiment described in the MTA to Alopexx, and wrote that it was interested in negotiating "an official right to use your vaccine in order to move forward, and define financial compensation if the product happens to be successful." (Compl. ¶¶ 40-41). The parties apparently did not discuss the licensing request further. (*Id.* ¶ 41).

In January 2021, Xenothera contacted Alopexx to discuss work that it had allegedly performed with antisera derived from the 2018 experiment, which it referred to as XAB05. (*Id.* ¶¶ 42-43). XAB05 can only be produced by immunizing animals with the AV0328 vaccine. (*Id.* ¶ 7). Both antibodies target PNAG to treat and prevent microbial infections. (*Id.*). Xenothera requested a license to AV0328 so that it could continue to produce XAB05, and proposed

3

launching a trial to compare its antibody to the one produced by Alopexx.  (*Id.* ¶¶ 43-44). Alopexx asked Xenothera to prepare a non-overlapping indication for XAB05 that would not compete with F598.  (*Id.* ¶ 45).  Xenothera apparently did not do so, and the parties never entered into a licensing agreement.  (*Id.* ¶ 47).

According to the complaint, in March 2022, Alopexx learned that Xenothera had continued to conduct studies using the antisera derived from the preliminary experiment. (Compl. ¶ 49).  The complaint alleges that these studies "were aimed at developing a competitor to Alopexx's F598 product candidate."  (*Id.* ¶ 49).  Alopexx also learned that Xenothera had been recruiting investors in its XAB05 product, apparently without disclosing that it could not be developed without license rights to AV0328.  (*Id.* ¶ 50).   Xenothera declined to provide Alopexx with additional information about its use of the AV0328 vaccine upon request.  (*Id.* ¶¶ 51-52).

In June 2022, Xenothera filed a lawsuit against Alopexx in the commercial court in Nantes, France, claiming licensing rights to the AV0328 vaccine, and seeking payment of 120 million euros in the alternative.  (*Id.* ¶ 53).  The complaint alleges that Xenothera has falsely suggested that XAB05 is a viable competitor to F598, when in fact XAB05 is not viable without Xenothera securing a legal right to Alopexx's vaccine.  (*Id.* ¶ 55).  Xenothera's lawsuit and false claims have allegedly harmed Alopexx as it prepares its initial public offering, because its value depends in large part on "the value of its intellectual property and its plans for product development."  (*Id.* ¶¶ 54-55).

B. **Procedural Background**

Plaintiff filed this suit on July 6, 2022.  The complaint asserts claims for declaratory relief (Count 1), breach of contract (Count 2), breach of the implied covenant of good faith and fair dealing (Count 3), and unjust enrichment (Count 4).  Alopexx seeks a declaratory judgment that Xenothera is not entitled to ownership rights, titles, options, or licenses as to the AV0328

vaccine. (Compl. ¶ 63). It also seeks damages for diminished demand for Alopexx stock caused by Xenothera's license claims and for legal fees and costs associated with defending against the French suit, as well as restitution for the value of Xenothera's use of the AV0328 vaccine. (Compl. ¶¶ 75, 82, 92).

On August 31, 2022, defendant moved to dismiss the complaint pursuant to the doctrine of *forum non conveniens*, or alternatively to stay the case in favor of the proceeding currently pending in France. At the same time, defendant moved to dismiss Counts 2 through 4 pursuant to Fed. R. Civ. P. 12(b)(6). In the event that the case is not entirely dismissed or stayed, defendant has requested an extension of time to respond to Count 1 within 14 days of the resolution of the Rule 12(b)(6) motion.

## II.     Motion to Dismiss on the Basis of *Forum Non Conveniens*

Defendant has moved to dismiss on the basis of *forum non conveniens*. Defendant first contends that the forum-selection clause contained within the MTA bars plaintiff from filing suit in this court. Even if the forum-selection clause is not dispositive, defendant asserts that the interests of convenience and efficiency weigh in favor of litigating the suit in French court.

### A.     Whether the Forum-Selection Clause Governs

The Supreme Court has stated that "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Atlantic Marine Construction Co., Inc. v. United States District Court for the Western District of Texas et al.*, 571 U.S. 49, 60 (2013). Both parties contend that the forum-selection clause contained within the MTA dictates the outcome of this motion.[1]

---

[1] "A forum selection clause is 'prima facie valid' and, absent a 'strong showing' by the resisting party that the clause is '"unreasonable" under the circumstances,' it should not be set aside." *Claudio-De Leon v. Sistema Universitario Ana G. Mendez*, 775 F.3d 41, 48 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)). Neither party has challenged the validity of the forum-selection clause here.

The forum-selection clause reads as follow:

This Agreement shall be construed and governed by the laws of the Commonwealth of Massachusetts without regard to Massachusetts' conflicts of law principles or of France. The Parties agree that any action arising out of or related to this Agreement may be brought in the Massachusetts state courts or the US federal courts sitting in Boston, Massachusetts or in Nantes, France, and the parties each hereby submit to the in personum [sic] jurisdictions of each such courts for such purposes. The Parties hereby consent to service of process in any such action by internationally recognized courier or by registered mail at their respective addresses set forth on the first page hereof.

(MTA ¶ 13).

Defendant interprets that language to mean that a claim may be brought in only one of the named jurisdictions, and that therefore the forum where a claim is first brought has exclusive jurisdiction over all claims arising out of the MTA. Because the French suit was filed first, defendant asserts that plaintiff violated the forum-selection clause by later filing suit in the District of Massachusetts.

The text of the contract does not clearly support defendant's interpretation. The language is permissive, stating that a case *may* be brought in three different forums; nothing indicates that cases may not be brought concurrently in more than one forum, or even in another forum entirely. *See Claudio-De Leon v. Sistema Universitario Ana G. Mendez*, 775 F.3d 41, 46 (1st Cir. 2014) ("Permissive forum selection clauses . . . authorize jurisdiction and venue in a designated forum, but do not prohibit litigation elsewhere . . . . In contrast, mandatory forum selection clauses contain clear language indicating that jurisdiction and venue are appropriate exclusively in the designated forum." (citation omitted)); *Summit Packaging Sys., Inc. v. Kenyon & Kenyon*, 273 F.3d 9, 12 (1st Cir. 2001) (noting that words like "will," "shall," or "must" indicate a mandatory forum-selection clause). Therefore, it does not appear that plaintiff violated the terms of the forum-selection clause by filing suit in this court.

Plaintiff, on the other hand, asserts that the forum-selection clause precludes defendant's

*forum non conveniens* challenge. It contends that by agreeing to a forum-selection clause that identifies the District of Massachusetts as an appropriate forum, defendant has waived the right to challenge a suit brought in this court. However, a forum-selection provision "is not given dispositive effect" in the *forum non conveniens* analysis; "[r]ather, it is simply one of the factors that should be considered and balanced by the courts in the exercise of sound discretion." *Royal Bed & Spring Co. v. Famossul Industria e Comercio de Moveis Ltda.*, 906 F.2d 45, 51 (1st Cir. 1990) (noting that while the presence of a forum-selection clause factors into the analysis of the parties' private concerns, a court must also consider public-interest factors). Therefore, defendant may bring a *forum non conveniens* challenge notwithstanding the fact that plaintiff has filed suit in an agreed-to forum. *See EMC Corp. v. Petter*, 104 F. Supp. 3d 127, 134 (D. Mass. 2015) (analyzing *forum non conveniens* factors where plaintiff complied with valid forum-selection clause).

Accordingly, while plaintiff has complied with the forum-selection clause by filing suit in this court, the Court will nevertheless proceed to analyze defendant's motion to dismiss on the ground of *forum non conveniens*.

### B. Whether Case Should Be Dismissed Based on *Forum Non Conveniens*

Even if the forum-selection clause does not preclude plaintiff from filing suit in this court, defendant contends that the case should be dismissed in the interest of convenience and judicial efficiency.

#### 1. *Forum Non Conveniens* Standard

"The doctrine of *forum non conveniens* . . . permits a court to dismiss a case because the chosen forum (despite the presence of jurisdiction and venue) is so inconvenient that it would be unfair to conduct the litigation in that place." *Nandjou v. Marriott Int'l, Inc.*, 985 F.3d 135, 140 (1st Cir. 2021) (citations and quotation marks omitted). The doctrine "is limited by the

overarching principle that a 'plaintiff's choice of forum should rarely be disturbed.'" *Adelson v. Hananel*, 510 F.3d 43, 52 (1st Cir. 2007) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).  A defendant bears "a heavy burden" in overcoming the presumption in favor of a plaintiff's home forum.  *Id.* at 52-53 (noting that any federal district court is a United States citizen's home forum where the alternative is foreign).  Nonetheless, "'a citizen's forum choice should not be given dispositive weight' and 'dismissal should not be automatically barred when a plaintiff has filed suit in his home forum.'"  *Interface Partners Int'l Ltd. v. Hananel,* 575 F.3d 97, 102 (1st Cir. 2009) (quoting *Piper*, 454 U.S. at 254 n.23).

Dismissal on the ground of *forum non conveniens* requires that a defendant establish (1) that there is an "adequate alternative forum" and (2) that "considerations of convenience and judicial efficiency strongly favor litigating the claim in the alternative forum."  *Iragorri v. International Elevator, Inc.,* 203 F.3d 8, 12 (1st Cir. 2000).  Even assuming an adequate alternative forum exists, the Court finds that defendant has not shown that the public and private interest factors favor dismissal on that basis.

### 2. Adequate Alternative Forum

"At the first step, an adequate alternative forum exists when '(1) all parties can come within that forum's jurisdiction, and (2) the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court.'"  *Imamura v. General Elec. Co.*, 957 F.3d 98, 106 (1st Cir. 2020) (quoting *Mercier v. Sheraton Int'l, Inc.*, 935 F.2d 419, 424 (1st Cir. 1991) (*Mercier I*)).  The defendant generally meets its burden if it establishes that "the alternative forum addresses the types of claims that the plaintiff has brought and that the defendant is amenable to service of process there."  *Iragorri*, 203 F.3d at 12.  A forum is only inadequate if the remedy provided "is so clearly inadequate or unsatisfactory that it is no remedy at all."  *Mercier v. Sheraton Int'l, Inc.*, 981 F.2d 1345, 1350

(1st Cir. 1992) (*Mercier II*) (quoting *Piper*, 454 U.S. at 254).

The forum-selection clause specifies that the parties are subject to the personal jurisdiction of the French commercial court and that they consent to service of process in any such action, satisfying the first requirement. As to the second requirement, defendant does not address whether plaintiff could bring the claims alleged here in the French court. However, the fact that the forum-selection clause includes France obviously suggests that both parties viewed it as an appropriate forum for resolving disputes related to the MTA. (MTA ¶ 13). Furthermore, the unavailability of a particular remedy, or the likelihood that recovery will be less favorable to the plaintiff, does not by itself make the alternative forum inadequate. *Piper*, 454 U.S. at 247-55. Finally, and in any event, plaintiff has not opposed defendant's motion on this ground. Taken together, it does not appear that the French forum is "clearly inadequate."

### 3. Weighing of Public and Private Factors

At the second step of the *forum non conveniens* analysis, "the defendant must show that the compendium of factors relevant to the private and public interests implicated by the case strongly favors dismissal." *Iragorri*, 203 F.3d at 12 (citing *Gulf Oil Corp.*, 330 U.S. at 508-09). Defendant asserts that because a valid forum-selection clause is present, the Court should follow the approach described in *Atlantic Marine Construction Co., Inc. v. U.S. District Court for the Western District of Texas*, 571 U.S. 49 (2013). In that case, the plaintiff in the lower court had entered into a contract containing a forum-selection clause that specified that all disputes would be litigated in Virginia. After the plaintiff filed suit in Texas, the defendant moved to dismiss the case, or to transfer it to Virginia.[2] The Supreme Court stated that while a district court should

---

[2] While *Atlantic Marine* specifically dealt with motions to transfer pursuant to 28 U.S.C. § 1404(a), the court noted that "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Atlantic Marine*, 571 U.S. at 60. And because "Section 1404(a) is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum

9

ordinarily consider both private and public factors when assessing a motion to transfer (or a *forum non conveniens* motion), that "calculus changes [] when the parties' contract contains a valid forum-selection clause." *Id.* at 62-63. In such cases, "the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained [or dismissal of the case] is unwarranted." *Id.* at 63. Furthermore, the court should "deem the private-interest factors to weigh entirely in favor of the preselected forum," and consequently should "consider arguments about public-interest factors only." *Id.* at 64. Finally, the alternative forum should not apply the original venue's choice-of-law rules—"a factor that in some circumstances may affect public-interest considerations." *Id.* at 64.

Defendant contends that *Atlantic Marine* dictates that the Court cannot consider the private-interest factors, and that plaintiff bears the burden of showing that public-interest factors overwhelmingly disfavor dismissal. However, the Court does not read *Atlantic Marine* to require the modified *forum non conveniens* analysis in *all* cases involving valid forum-selection clauses. Instead, it appears to apply where the plaintiff's choice of forum diverges from the preselected forum. Because the plaintiff in *Atlantic Marine* chose to deviate from the bargained-for terms of the agreement, the Court determined that deference to the plaintiff's choice of forum was unwarranted, and that it had effectively "waive[d] the right to challenge the preselected forum as inconvenient." *Id.* at 64.

Here, plaintiff has filed suit in one of the forums explicitly identified in the forum-selection clause. The fact that plaintiff could have also filed in French court does not warrant disregarding its selection. And unlike in *Atlantic Marine*, because the forum-selection clause

---

is within the federal court system," "the same standards should apply to motions to dismiss for *forum non conveniens* in cases involving valid forum-selection clauses pointing to state or foreign forums." *Id.* at 60, 66 n.8.

10

specifies more than one forum, it does not resolve the question of which one best promotes the parties' private interests. Therefore, the rule announced in *Atlantic Marine* appears not to apply, and the burden remains on the defendant to show that the private and public interest factors strongly favor dismissal.

### a.      **Private-Interest Factors**

Factors relating to the parties' private interests include:

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Gulf Oil Corp.*, 330 U.S. at 508.

Here, the private factors do not clearly weigh in favor of the French forum. Plaintiff's suit concerns a contract between a Cambridge firm and a French firm and the development of pharmaceuticals in both the United States and in France. While neither party has submitted a list of potential witnesses or evidence, there is no reason evident from the record why either are likely to be disproportionately located in one place or the other.[3] And although it may be slightly less burdensome for plaintiff's witnesses to prepare written testimony to submit to the French court than it is for defendant's witnesses to testify live in the United States, "[l]itigating in a party's home forum . . . is almost always more convenient than litigating in a foreign forum." *Neelon v. Krueger*, 63 F. Supp. 3d 165, 173 (D. Mass. 2014).[4] The fact that both parties voluntarily signed a forum-selection clause designating Massachusetts as an appropriate forum

---

[3] Neither party has addressed whether compulsory process may be available as to any of those witnesses.

[4] Defendant attests that plaintiff would "not be required to bring any of its witnesses to France because the French proceedings are conducted on the basis of written submissions, affidavits, documents, and counsel's oral presentation to the French court." (Gautier-Sauvagnac Decl. ¶ 20).

11

obviously undermines defendant's argument that litigation in the United States is so costly as to be "oppressive and vexatious" to a substantial degree. Finally, much of the dispute concerns the interpretation of a contract written in English, making it at least somewhat more preferable for a court familiar with the language to review the terms. *See Everett/Charles Contact Prod., Inc. v. Gentec, S.A.R.L.*, 692 F. Supp. 83, 88 (D.R.I. 1988) (considering cost of translating contract into French as one factor weighing against dismissal).

Under the circumstances, dismissal would serve "merely to shift the inconvenience from one party to the other." *Sigros v. Walt Disney World Co.*, 129 F. Supp. 2d 56, 71 (D. Mass. 2001) (assessing issue in the context of a motion to transfer). Accordingly, defendant has not shown that the private-interest factors strongly weigh in favor of dismissal.

    b.  **<u>Public-Interest Factors</u>**

Public-interest factors include "the administrative difficulties of docket congestion; the general goal of 'having localized controversies decided at home,' and concomitantly, ease of access to the proceedings on the part of interested citizens; the trier's relative familiarity with the appropriate rules of decision; and the burdens of jury duty." *Iragorri*, 203 F.3d at 12 (quoting *Gulf Oil Corp.*, 330 U.S. at 508-09).

Defendant has not shown that this is "the sort of 'localized controversy' best resolved in any particular forum." *Neelon*, 63 F. Supp. 3d at 173. Although the French public may have an interest in a lawsuit involving a French company engaged in activity in France, the Massachusetts public has an equivalent interest in the rights of a Cambridge-based company developing a drug in Massachusetts. Likewise, there appears to be "no unfairness in asking other Massachusetts citizens to serve as jurors" in a case involving a Massachusetts corporation. *Id.* at 174.

Defendant contends that "the realities of civil docket congestion in the District of

12

Massachusetts" indicate that the suit "will likely be a long, drawn out and expensive process" compared to the litigation in France. (Def. Mem. at 10). But it has not provided evidence concerning the relative speed of trials in each forum, beyond the conclusive assertion that parties in French court can generally expect a decision within a year—an estimate that plaintiff disputes. (*Compare* Veil Decl. ¶ 6 (estimating that it will take two-and-a-half to three years for the French action to reach a final judgment) *with* Gautier-Sauvagnac Decl. ¶ 22 (stating that litigants "[i]n the typical case" can expect a decision "within a year")). Furthermore, in the First Circuit, "[t]he existence of concurrent litigation is not a relevant factor to the [*forum non conveniens*] analysis." *Adelson*, 510 F.3d at 54.

Finally, the parties disagree as to whether the MTA is to be interpreted according to the law of Massachusetts exclusively, or under either Massachusetts or French law.[5] But under either interpretation, defendant has not shown that this District Court would be *required* to apply French law, and therefore that factor does not weigh in favor of dismissal. *See Imamura*, 957 F.3d at 107 (1st Cir. 2020) ("[R]elevant public interest factors include . . . the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action." (quoting *Piper*, 454 U.S. at 240 n.6)).

Weighing the private-interest and public-interest factors together, the Court determines that defendant has not met its burden of showing that considerations of convenience and judicial

---

[5] Again, the relevant portion of the contract states: "This Agreement shall be construed and governed by the laws of the Commonwealth of Massachusetts without regard to Massachusetts' conflicts of law principles or of France." (MTA ¶ 13). That provision could plausibly be interpreted to mean, among other things, that (1) Massachusetts law applies, without regard to the conflicts of law principles of Massachusetts or the conflicts of law principles of France; or (2) either Massachusetts law or French law applies, but without regard to the conflicts of law principles of Massachusetts. The fact that suit may be brought in either the courts of Massachusetts or France supports the second interpretation; it seems odd to provide that a suit could be filed in France, but that the French court would be required to apply Massachusetts law. But it also seems odd to provide that either Massachusetts law or French law applies, particularly since the contract provides no mechanism for determining who chooses (presumably, both cannot be applied at the same time). In any event, the Court need not resolve the issue at this stage.

efficiency overcome the "heavy presumption" in favor of plaintiff's choice of its home forum. *Adelson*, 510 F.3d at 53. Accordingly, the motion to dismiss on the ground of *forum non conveniens* will be denied.

### III.    Motion to Stay the Case

In the event that the Court denies the motion to dismiss based upon *forum non conveniens*, defendant requests that the Court stay this action "for six months in order to permit Alopexx the opportunity to seek relief from the French court either dismissing or staying that action." (Def. Mem. at 15). The Court concludes that a stay of litigation is appropriate.

#### A.    Legal Standard

Defendant contends that the "first-to-file rule" applies here and dictates that the later-filed federal case should be stayed pending the resolution of the first-filed French case. *See Cianbro Corp. v. Curran-Lavoie, Inc.*, 814 F.2d 7, 11 (1st Cir. 1987) ("Where identical actions are proceeding concurrently in two federal courts, entailing duplicative litigation and a waste of judicial resources, the first filed action is generally preferred in a choice-of-venue decision."). However, that rule applies to cases filed in two federal courts, not to cases filed in a federal court and a foreign court. *See Compagnie des Bauxites de Guinea v. Insurance Co. of N. Am.*, 651 F.2d 877, 887 n.10 (3d Cir. 1981) ("The rule has never been applied, and in fact it was never meant to apply where the two courts involved are not courts of the same sovereignty.").

Instead, the Court will analyze defendant's request for a stay under principles of international comity.[6] "Federal courts have the inherent power to stay an action based on the pendency of a related proceeding in a foreign jurisdiction." *Goldhammer v. Dunkin' Donuts,*

---

[6] "International comity is a doctrine that counsels voluntary forbearance when a sovereign which has a legitimate claim to jurisdiction concludes that a second sovereign also has a legitimate claim to jurisdiction under principles of international law." *United States v. Nippon Paper Indus. Co.*, 109 F.3d 1, 8 (1st Cir. 1997).

*Inc.*, 59 F. Supp. 2d 248, 251 (D. Mass. 1999).  However, that power must be balanced against the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given to them."  *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).

Courts in this district have considered the following factors "in determining whether to grant a stay because of parallel litigation in a foreign forum:  (1) similarity of parties and issues involved in the foreign litigation; (2) the promotion of judicial efficiency; (3) adequacy of relief available in the alternative forum; (4) issues of fairness to and convenience of the parties, counsel, and witnesses; (5) the possibility of prejudice to any of the parties; and (6) the temporal sequence of the filing of the actions."  *Goldhammer*, 59 F. Supp. 2d at 252-53 (collecting cases).

### B.       Whether the Factors Weigh in Favor of Staying Litigation

The first factor weighs in favor of staying the case in this court.  The parties in both suits are identical.  And there is significant overlap in the parties' claims.  Defendant seeks a declaratory judgment of licensing rights to the AV0328 vaccine, while plaintiff seeks a judgment declaring the opposite.  While plaintiff has asserted additional contract and unjust enrichment claims in this court, those claims will also require interpreting the terms of the MTA and the scope of the parties' rights to the vaccine and related material.  *Id.* at 253 ("[T]he parties and claims need not be identical in order for one action to be stayed or dismissed in deference to an earlier action.").

Because the cases involve similar factual and legal issues, staying the action will also promote judicial efficiency.  Allowing the cases to proceed in tandem "would consume a great amount of judicial, administrative, and party resources" and "create[] the risk of inconsistent judgments."  *Id.* at 254 (quoting *EFCO Corp. v. Aluma Sys., USA, Inc.*, 983 F. Supp. 816, 824 (S.D. Iowa 1997)).  While the French suit remains in the early stages of litigation, it is generally

desirable for discovery to take place in a single forum to reduce the risk of contradictory discovery rulings and duplicative discovery efforts.[7]

Furthermore, the French court's resolution of defendant's claim for licensing rights may have preclusive effect upon plaintiff's claim for declaratory judgment of ownership in the vaccine. That judgment, in turn, may have implications for the remainder of plaintiff's contract and unjust enrichment claims. While the French case may not fully resolve plaintiff's claims, "[t]he fact that the Court is staying, rather than dismissing, the federal action provides future opportunity for any relief." *Goldhammer*, 59 F. Supp. 2d at 254. Therefore, a stay will not prevent plaintiff from obtaining adequate relief, and may in fact help narrow the issues before this court.

The remaining factors do not obviously favor either side. There is likely to be substantial inconvenience regardless of the forum with respect to procuring witnesses and evidence because the parties are located in different countries. Despite plaintiff's concern over the difficulties posed by a French court interpreting a contract written in English and (possibly) applying Massachusetts law, the parties agreed that all claims arising from the MTA could be litigated in France (or, alternatively, France and Massachusetts), so there is no apparent unfairness in allowing the French suit to proceed first. If either side would be unduly prejudiced by either granting or denying a stay, it is not immediately obvious. Finally, with respect to the temporal sequence of the actions, while the cases were filed within a month of each other, the fact that the French litigation was filed first weighs somewhat in favor of granting a stay. *Compare ITyX*

---

[7] Plaintiff filed a notice of supplemental material on March 10, 2023, stating that the commercial court in Nantes determined that it lacks jurisdiction over defendant's lawsuit and has transferred the case to the Paris court of justice. While this indicates that a judgment in the French litigation is likely not imminent, it does not suggest that allowing this suit to proceed simultaneously will be more efficient overall.

*Sols., AG v. Kodak Alaris, Inc.*, 2016 WL 8902595, at *6 (D. Mass. June 24, 2016) (declining to issue stay in federal suit filed one month before foreign suits), *with National Union Fire Ins. Co. of Pittsburgh, PA. v. Kozeny*, 115 F. Supp. 2d 1243, 1249 (D. Colo. 2000) (issuing stay in federal suit filed two months after foreign suit).

In sum, the similarity of parties and issues, the interest in judicial efficiency, and the availability of adequate relief—combined with the interest in international comity—weigh in favor of staying the case.  Accordingly, the motion to stay the case will be granted.

### IV.     Conclusion

For the foregoing reasons, defendant's motion to dismiss on the basis of *forum non conveniens* is DENIED, and defendant's motion to stay litigation is GRANTED, pending further order of the Court.

**So Ordered.**

|  |  |
|---|---|
|  | /s/ F. Dennis Saylor IV |
|  | F. Dennis Saylor IV |
| Dated: April 28, 2023 | Chief Judge, United States District Court |